# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BERNARD E. GREEN,**

       **Plaintiff,**

**-vs-**                                                                                      **Case No. 6:14-cv-1334-Orl-DAB**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security,**

       **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for disability insurance benefits. For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and the matter is **REMANDED** for additional findings.

## Procedural History

Plaintiff applied for benefits, alleging that he became unable to work on July 1, 2005 (R.187-95). The agency denied Plaintiff's applications initially and upon reconsideration,[1] and he requested and received a hearing before an administrative law judge ("the ALJ"). On November 29, 2012, the ALJ issued an unfavorable decision, finding Plaintiff to be not disabled (R. 11-24). Plaintiff presented additional evidence to the Appeals Council, but it declined to grant review (R. 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed his Complaint (Doc. 1), the parties consented to the jurisdiction of the undersigned United States Magistrate Judge, and the matter is fully briefed and ripe for review pursuant to 42 U.S.C. §405(g).

---

[1] It appears that a prior application was filed and was not prosecuted past the reconsideration step. The ALJ appears to have implicitly reopened the prior denial, as the decision considers the entire record from the alleged onset date.

## Nature of Claimed Disability

Plaintiff claims to be disabled due to pain and residuals from "neck fusion, left/right knee surgery, pain in shoulders/elbows/wrists/hands, pain in knees/feet/ankles" (R. 328) as well as headaches and memory and mental health issues; more specifically: "lower back disc herniation, cervical spinal fusion @ CS-6, 9 left knee surgeries, 1 right knee surgery, right 5th finger surgery, bilateral shoulder problems, puncture lung, bilateral wrist pain, broken right ankle with plate and 7 screws, multiple concussions, etc.," all directly related to playing 10 years of professional football in the NFL (R. 229).

*Summary of Evidence Before the ALJ*

Plaintiff was forty one years old on the date last insured (March 31, 2009), with a college education and past relevant work as a professional football player and a coach (R. 230, 236, 323).

In the interest of privacy and brevity, the medical evidence relating to the pertinent time period will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert, written forms and reports completed by Plaintiff and his wife, and opinions from examining and non-examining state agency consultants. By way of summary, the ALJ determined that: "Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy, degenerative disc disease of the lumbar spine, osteoarthritis of the shoulders with impingement, degenerative joint disease of the knees, chondromalcia of the left knee, osteoarthritis of the right ankle, right great toe and the left 5th digit finger, mild right ulnar entrapment, and an mild cognitive disorder and adjustment disorder (20 CFR 404.1520(c)" (R. 12). The ALJ determined that through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525

aud 404.1526) (R. 14).  The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b), except that he is only able to stand or walk up to four hours in an eight-hour workday for one hour at a time before needing to alternate to the sitting position for ten minutes while on task. The claimant is also restricted from climbing ladders, ropes aud scaffolds, as well as working at heights or with dangerous moving machinery. He must avoid excessive vibration and extremes of cold temperature. The claimant is precluded from overhead reaching and kneeling, but is occasionally able to stoop, crouch, balance and climb stairs. The claimant is able to sit six hours in an eight hour workday. The claimant is unable to constantly move his neck, and is not able to constantly handle objects with his hand, finger or feel. The claimant is limited to simple, routine tasks with only occasional changes in the work setting, and is able to sustain concentration for periods of two hours at a time before having a regular work break.

(R. 15-16).

The ALJ determined that Plaintiff could not return to his past relevant work (R. 22); however, with the assistance of the Vocational Expert ("the VE"), the ALJ found that other work existed in significant numbers that Plaintiff could perform (R. 22-24), and therefore, the ALJ found Plaintiff was not disabled "at any time from July 1, 2005, the alleged onset date, through March 31, 2009, the date last insured (20 CFR 404.1520(g)." (R. 24).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff contends that the Commissioner's decision was not formulated in accordance with proper standards and was not based upon substantial evidence. Specifically, Plaintiff objects to the evaluation of the opinion evidence, noting that *all* of his treating and examining physicians have found him to be precluded from substantial work activity, and further objects to a finding that there are other jobs which he might be capable of performing. The Court examines these issues in the context of the sequential assessment used by the ALJ.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's

impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

*Evaluating Opinion Evidence*

As acknowledged by the ALJ, Plaintiff has numerous "severe impairments," including degenerative disc disease of the cervical spine with radiculopathy, degenerative disc disease of the lumbar spine, osteoarthritis of the shoulders with impingement, degenerative joint disease of the knees, chondromalcia of the left knee, osteoarthritis of the right ankle, right great toe and the left 5th digit finger, mild right ulnar entrapment, and an mild cognitive disorder and adjustment disorder (R. 12). The record contains several consistent opinions from treating and examining specialists, all of whom agreed that the combination of Plaintiff's many impairments caused disabling limitations. Among these opinions:

(a) Orthopedist Glenn B. Perry, M.D., evaluated Plaintiff on July 31, 2007, in connection with his claim for disability benefits from the NFL Player Retirement Plan (R. 464-468). After taking an extensive history of Plaintiff's football injuries and surgeries and conducting an examination, including numerous x-rays, Dr. Perry assessed Plaintiff with impairments of the "C-spine, L-spine, B-shoulders, B-ankles, B-knees, B-hands" (R. 467). Dr. Perry found these impairments to be "permanent" and opined that Plaintiff was "…totally disabled to the extent that he is substantially unable to engage in any occupation for remuneration or profit." (R. 468). He noted: "the patient has sustained a multitude of injuries as a result of his career in the NFL. I do not believe that any of the injuries in themselves would be enough to warrant total and permanent disability. However *the multitude of injuries combined more than exceeds the criteria for permanent and total disablity*. I do

not think that this patient can engage in any significant employment for remuneration or profit" (R. 466, emphasis added).

b) Orthopedic Surgeon Michael J. Einbund, M.D. performed an extensive physical examination and record review on June 27, 2007, as part of a Qualified Medical Evaluation of "injuries sustained during the course of [Plaintiff's] career as a professional football player" (R. 494-95, 500-517). Dr. Einbund noted:

> At that time, he complained of headaches; memory loss; blurred vision; neck pain with numbness down the left arm; bilateral shoulder pain; right wrist pain with popping and cracking; low back pain with numbness and tingling down the left leg; bilateral knee pain; right ankle pain; turf toe pain on the right foot; shortness of breath; loss of sleep; and depression. I examined the patient and diagnosed him with cephalgia; status post op anterior cervical fusion; impingement syndrome, bilateral shoulders, with bilateral acromioclavicular separation; chronic sprain, right wrist; chronic sprain, fingers, bilateral hands; lumbosacral spine strain with radicular complaints; status post op bilateral knees; history of fracture, right ankle; chronic sprain, left ankle; turf toe; memory loss; depression; insomnia; and shortness of breath.

(R. 495, 517).

Dr. Einbund found Plaintiff to be "permanently disabled" (R. 499). The disability status of "permanent and stationary" (R. 517) was accompanied by a detailed listing of "objective factors" as well as subjective factors, of disability, and an extensive listing of work restrictions (R. 519-521). His opinions included: "With regard to the patient's neck and back, he requires a work restriction precluding him from substantial work." (R. 521).

Subsequent to this evaluation and at Dr. Einbund's request, Plaintiff underwent MRI scans of his shoulders, right knee and cervical and lumbar spine. In a June 4, 2008 report, Dr. Einbund noted that "a right shoulder MRI scan revealed impingement with possible partial thickness tear as well as findings consistent with a glenoid labrum tear. He should, therefore have provision for right shoulder surgery with distal clavicle resection, as well as repair of the glenoid labrum tear. The left shoulder MRI scan revealed findings consistent with impingement syndrome. I would recommend he have

provision for left shoulder surgery with distal clavicle resection. The right knee MRI scan was consistent with a meniscus tear and he should have provision for a right knee arthroscopy. The MRI scans of the cervical spine and lumbar spine did reveal small disc bulges at several levels and I would recommend he have provision to be seen by a spinal surgeon and for pain management specialist should his symptoms persist or worsen" (R. 496). His other opinions remained "unchanged from those noted" in the June 27, 2007 report. *Id.*

(c) Orthopedist Neil A. Beinhaker, M.D., examined Plaintiff on January 24, 2008 (R. 489-490). His report indicates that he reviewed multiple records of the Plaintiff's surgeries, as well as MRIs of the knees and cervical spine, which indicate "severe articular cartilage loss"of the knees and "anterior fusion of C5-6 with osteophytes and degenerative changes" (R. 489).  According to his notes: "Physical exam reveals restriction of motion of the cervical spine with pain. He has weakness in grip strength on the left. Knee exam reveals chronic swelling with joint line tenderness and mild laxity in both knees. He is limited in his ability to walk, bend, stoop or climb." *Id.* Dr. Beinhaker's impression was that Green suffered from cervical degenerative arthritis, internal derangement knees bilateral and upper left extremity paresis (R. 489-490). He opined that Plaintiff "was totally and permanently disabled for [sic] gainful employment." (R. 491).

(d) Orthopedic surgeon Robert Murrah, M.D. began treating Plaintiff on February 26, 2007 (R. 481-82).  On initial examination, Dr. Murrah assessed numerous impairments of Plaintiff's shoulders, knees and ankle, and noted "the patient has multiple orthopaedic issues contributing to an overall disability from a musculoskeletal standpoint." (R. 485). Plaintiff was deemed "unable to work pending further evaluation."  *Id.*

On return examination on March 27, 2007, Dr. Murrah examined Plaintiff and reviewed prior records and current x-rays and diagnosed cervical neuritis and cervical diskectomy and fusion (R. 483).  Dr. Murrah ordered a repeat MRI of the cervical spine and nerve conduction studies and an

-7-

EMG and opined that Plaintiff "is temporarily totally disabled from work as a professional football player due to his cervical spine condition." *Id.*

Plaintiff returned to Dr. Murrah on July 11, 2007 (R. 481). Examination and overall symptoms were unchanged. The studies ordered by Dr. Murrah had not been presented for his review. Although Dr. Murrah advised that he wanted "all medical evaluations forwarded for my review" and "I do not have any new recommendations pending review of this information," he noted that: "[Plaintiff] may continue light duty with the following restrictions: 25-pound lifting limit, no over shoulder lifting, no repetitive lifting, no repetitive stooping, and no climbing." *Id.*

On subsequent visit, Dr. Murrah again requested nerve conduction studies and EMG's (R. 480). On October 5, 2007, Plaintiff returned, following completion of the ordered studies and continuing to complain of pain and weakness in his left upper extremity and constant pain in both knees (R. 479). Dr. Murrah noted that the studies confirmed cervical neuritis and a mild right cubital tunnel neuropathy, and assessed Plaintiff with posttraumatic arthritis both knees; cervical disc herniation, neuritis, and cervical stenosis; cervical radiculopathy; and cubital tunnel syndrome. It was his opinion that "The patient is temporarily totally disabled from work; in my opinion he is definitely permanently disabled from work as an NFL football player and should be considered for social security disability" (R. 479). In a handwritten addendum, Dr. Murrah set forth more specific restrictions: "sitting – 30 min max, stand and stretch frequently; standing – 30 minutes max, sit and rest frequently; walking – 200 yards max without resting; no prolonged walking; lifting – limit 20 lbs, no repetitive lifting…handling objects – limited due to cervical neuritis and radicular nerve injury." (R. 532).

Plaintiff continued to see Dr. Murrah through at least January 11, 2011 (well after the date last insured). Of note, on June 30, 2008, within the time period at issue, Dr. Murrah received, examined and summarized the medical records of Drs. Einbund, Perry, and Dr. Haddock (regarding the electro

-8-

diagnostic studies), as well as other records, and opined: "After thorough review of the records and consultation, I would reiterate my opinion that these physicians generally agree with our assessment of [Plaintiff's] total permanent disability. As pointed out, *any single one of these injuries would not likely be disabling; however, the cumulative impact of all of these various injuries more than exceed the criteria for permanent total disability by work comp standards, social security standards, and general industry standards."* (R. 526-28- emphasis added).[2]

As set forth in her decision, the ALJ discredited the opinions of the three examining Board-certified orthopedic surgeons as well as the opinion of Plaintiff's long-time treating orthopedic surgeon, finding that "the opinions that the claimant is totally disabled are inconsistent with the objective medical evidence." (R. 18). In doing so, the ALJ reasoned:

> One of the claimant's physicians, Dr. Glenn Perry who completed a Total and Permanent Disability Benefits form for the NFL and indicated that the claimant is permanently totally disabled due to his impairments and is thus unable to engage in any occupation for remuneration or profit (Exhibit 4F, pages 4 to 5). Although Dr. Perry identified various musculoskeletal abnormalities during the evaluation, as is evidenced by the discussion of the medical evidence above, on examination he noted that the claimant had only mild weakness in the left upper extremity ( 4/5) and full strength in the lower extremities (Exhibit 4F, pages 3 to 4). Additionally, Dr. Beinaker, an examining physician indicated that the claimant is only able to engage in limited walking, bending, stooping, climbing, but also added more restrictive limitations, as he indicated that the claimant is permanently disabled from gainful employment (Exhibit 7F, page 4). However, Dr. Beinaker's findings are limited to left grip weakness, limited cervical motion and knee tenderness, swelling and mild laxity, which are not inconsistent with a limited range of light work. The undersigned has also considered the opinion of Dr. Einbund an independent examiner indicated in June 2007 and subsequently in 2008, that the claimant is not able to engage in substantial work related activities because of his neck impairment due to decreased range of motion in the neck, back, bilateral shoulders, right ankle, left knee, right ring finger and left small finger (Exhibit 8F, pages 27 to 29). The undersigned gives little weight to Dr. Einbund's conclusions that the claimant cannot work. The undersigned acknowledges that the claimant has limitations in his extremity motion based on injuries and degeneration; however, Dr. Einbund also noted that the claimant had normal gait, negative straight leg raise testing and normal strength in elbows, wrists,

---

[2]As is clear, the ALJ's finding that "[n]o treating physician has concluded that the claimant has an impairment severe enough to meet or equal a listing" (R. 14) does not appear to be supported by substantial evidence.

hands and hips, right knee, left ankle and full strength in both left upper and lower extremities (Exhibit 8F). Furthermore, Dr. Einbund indicated that the claimant's shoulder impairments preclude him from heavy lifting, repetitively above shoulder level and that his wrist, as well as hand impairments prevent him from repetitive, forceful gripping, and grasping (Exhibit 8F, page 27). Moreover, Dr. Einbund opined that the claimant's knee, ankle, and feet injuries limit him to standing up to four hours in an eight-hour day, and engaging in repetitive squatting, kneeling and climbing (Exhibit 8F, pages 27 to 28). Although Dr. Einbund has indicated the claimant's cervical symptoms preclude him from working, which is not supported by the findings cited above in his examinations or in the record of Dr. Murrah from 2008, 2009 and 2011, the undersigned has accorded some weight Dr. Einbund's limitations in regard to standing, walking, lifting, over shoulder work, repetitive postural activities and to some extent gripping (Exhibit 8F, page 14). The above conclusions that the claimant is totally disabled are given little weight, which will be further supported in the subsequent evaluation of treating orthopedic physician Dr. Murrah, discussed below. The undersigned also notes that determinations regarding disability from other entities are to be considered, but are reserved for the Commissioner.

In June 2007, treating orthopedic physician, Dr. Robert Murrah, placed the claimant on continued light duty, which is consistent with being able to lift up to 25 pounds, but also precluded lifting above the shoulder level, repetitive lifting or stooping, or climbing (Exhibit 6F). This degree of limitation seems appropriate, as the October 2007 examination indicated that the claimant remained quite strong (Exhibit 6F). Although Dr. Murrah indicated in October 2007, that the claimant was temporarily totally disabled from work (Exhibit 6F), his subsequent examinations in early 2008, show no focal neurological progression (Exhibit 9F), and in October 2008, the claimant denied weakness or sensory loss (Exhibit BF). Moreover, beginning in early 2009, findings included 5/5 strength throughout and the claimant continued to deny weakness or sensory loss (Exhibit 16F). Moreover, the results of diagnostic imaging revealed he has a solid fusion of the cervical spine (Exhibit 16F, page 3). Although the claimant has residual pain and limitation, the undersigned does not give significant weight to Dr. Murrah 's opinion that the claimant is totally disabled, as it is not supported by the medical evidence in his records. During his most recent examination in January 2011, Dr. Murrah noted that the claimant has 5/5 strength no reflex/sensory deficits other than slight decreased sensation of the left thumb and index finger, as well as some mild tenderness and spasm in the spine (Exhibit 16F, page 2). The unremarkable findings identified by Dr. Murrah were also supported during the neurological evaluation in September 2007, during which Dr. David Haddock remarked that the claimant had normal motor functioning and sensation in the upper extremities and was negative for Tinels in the wrist and elbows (Exhibit 9F, page 28).

In summary, the undersigned has accorded the opinions that the claimant is totally disabled little weight because the evidence does not support that his musculoskeletal impairments cause such debilitating limitations. The undersigned has considered and given significant weight to the earlier opinion of Dr. Murrah regarding light duty, and to many of the limitations cited by Dr. Einbund that are consistent with the residual functional capacity, and to the opinions of the State Agency reviewing medical

> consultants. Dr. Robert Kelly and John Dawson both assessed the severity of the claimant's musculoskeletal impairments and opined that the claimant is able to work at the light exertional level with postural, manipulative and environmental limitations (Exhibits l0F and 14F). Both Dr. Kelly and Dr. Dawson concur that, although numerous limitations were identified by Dr. Benihaker, the claimant's difficulty ambulating, bending, stooping, climbing and manipulating or grasping items are consistent with postural and manipulative restrictions, and thus do not preclude him from working at the light exertional level (Exhibits l0F page 7 and 14F, page 7).

(R. 18-19).

Plaintiff challenges these findings as being inconsistent with the standards of law applicable to weighing physician opinions. Upon review, the Court agrees.

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).) Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted

treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

Here, the ALJ acknowledged that Plaintiff suffers pain and residuals from several significant head to toe impairments, but discredited all of the specialists opinions of disability, citing some isolated treatment findings (specifically evidence of strength and sensory deficits), opinions of two non-examining state agency consultants, and the fact that the existence of disability is an issue reserved for the Commissioner. On the unique facts presented here, however, this rationale is not sufficient to comply with the above standards.

The Court first observes that there is no requirement that *all* of the evidence must uniformly support a treating physician's opinion and, indeed, such a case likely does not exist. Rather, in this context, the ALJ must look to the regulations and give controlling weight to the opinion of a treating physician, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. Here, the opinion of Dr. Murrah, a long time treating specialist, is supported by numerous laboratory findings (including x-rays, MRI's, nerve conduction studies, a neuropsychological evaluation) and clinical findings of

reduced range of motion, pain and radiculopathy. The opinion is not wholly conclusory (*see*, for example, specific restrictions at R. 532) and is consistent with the findings and opinions of *all* other examining orthopedists.

Although good cause to discount an opinion may exist if there is substantial contrary evidence, the occasional unremarkable examination finding does not appear to meet that standard here because an isolated finding of grip strength or mild tenderness does not serve to rebut the specialists' collective conclusion that, while each injury is, itself, not disabling, Plaintiff is nonetheless disabled due to *the cumulative impact of all of these various injuries.*

> When "a claimant has alleged a multitude of impairments, a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984). Furthermore, "it is the duty of the ... [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Id.*; 20 C.F.R. § 416.923.

*Walker v. Bowen,* 826 F. 2d 996, 1001 (11th Cir. 1987). Here, as the whole is described by the treating physicians as more than the mere sum of its parts, the ALJ was required to specifically address and discuss the effect of the combined impairments.[3] The administrative decision does not reflect that consideration.[4]

As for the state agency consultants, "the opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson v. Barnhart*, 138 Fed.Appx. 266, 271 (11th Cir. 2005), *citing Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988).

---

[3]Indeed, context is critical here. As the Eleventh Circuit has observed: "In *Sharfarz*, we determined that there was not good cause to reject the treating physician's opinion because, in essence, the ALJ had isolated portions of the report without taking them in context." *Fleming v. Commissioner, Social Sec. Admin.*, 550 Fed.Appx. 738, 740 (11th Cir. 2013), citing *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir.1987).

[4]The Court is aware that, in this circuit, an ALJ's statement that the claimant did not have "an impairment or combination of impairments that meet or equal a listing" has been found to be sufficient to show that the ALJ considered the combined effects of the impairments. *See, e.g., Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir.1991). This line of cases is not dispositive of the issue at bar, however. As the combination of impairments is the very basis for the physicians' opinions of disability, *Winschel* compels the ALJ to "state with particularity" the weight given to this opinion. The administrative decision does not contain such a particularized rationale for rejecting the opinion of the specialists that the combination of injuries is disabling.

*See also Sharfarz, supra*, 825 F.2d at 280 (non-examining physician's opinions are entitled to little weight when contradictory to treating physician's opinions, and will not constitute substantial evidence standing alone); *Spencer on behalf of Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir.1985) (opinion of non-examining physician, taken alone, could not constitute substantial evidence).

As it appears that the ALJ has failed to properly consider and weigh the opinions that the cumulative effect of Plaintiff's limitations are disabling, remand is required. Although Plaintiff raises other issues, this is dispositive.

## Conclusion

As the Court finds the evaluation of the opinion evidence does not comply with the dictates of *Winschel* and the resulting finding is not supported by substantial evidence, the final administrative decision is **reversed** and the matter is **remanded under sentence four of 42 U.S.C. § 405(g)**, **for additional consideration of the opinion evidence and for further findings**.[5]  The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 17, 2015.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[5]Although Plaintiff urges the Court to reverse for an award of benefits, such is not warranted here.  Remand for an award of benefits is appropriate only where the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). That standard is not met here and the ALJ must review and weigh the opinion evidence in the first instance.